**GREGORY NICOLAYSEN (State Bar 98544)**
**27240 Turnberry Lane, Suite 200**
**Valencia, CA 91355**
**Cell: (818) 970-7247**
**Fax: (661) 252-6023**
**Email: gregnicolaysen@aol.com**

**Counsel For Defendant,**
**Amada Alvarez**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | **2:16 - CR - 684 - CAS - 2** |
| ) | |
| **Plaintiff,** ) | **SENTENCING POSITION PAPER** |
| ) | **FILED BY DEFENDANT AMADA** |
| **vs.** ) | **ALVAREZ** |
| ) | |
| ) | **Date: February 10, 2025** |
| **AMADA ALVAREZ,** ) | **Time: 2:30 p.m.** |
| ) | **Court: The Hon. Christina A. Snyder** |
| **Defendant** ) | |
| ) | |

    Defendant Amada Alvarez hereby submits her sentencing position paper, including any objections to the Presentence Report ("PSR").


**DATED: February 02, 2025**                    **Respectfully Submitted,**




**By:_____/S/_____**
                    **GREGORY NICOLAYSEN**
                    **Attorney for Defendant,**
                    **Amada Alvarez**

## MEMORANDUM OF POINTS AND AUTHORITIES RE: SENTENCING

### I.

### INTRODUCTION

**A.    Opening Statement**

The unique and inspiring timetable of this eight-year case cries out for a time - served sentence for defendant Amada Alvarez, who has turned her life around in a truly impressive way since coming before this Court in October 2016 as a drug addict with a bipolar mental disorder for which her future was uncertain at best.  In the full eight years since being released on bond in January 2017, Ms. Alvarez has achieved what few would have imagined: she became drug-free and fully functional in her daily life, which included gainful employment and consistent dedication to raising her minor children.  As a testament to her post-offense rehabilitation, Ms. Alvarez has had no encounters with law enforcement, and with minor exceptions that were fully resolved to the satisfaction of Pretrial and this Court, she has complied fully over these eight years with her conditions of bond.

The defense deeply appreciates the Probation Office's recognition that this is a case that presents genuine mitigation that should override a guidelines approach to sentencing.[1]  But even the recommendation of Probation, which is one year and a day, is excessive, as a term in custody would not achieve any of the statutory purposes of punishment under section 3553(a).

With regret, defense counsel must be adamant in advocating that the government's 51-month recommendation should be flat-out rejected by this Court as nothing more than a number-crunching exercise driven entirely by the guidelines for

---

[1]    All references are to the Revised PSR (Pacer #262, Filed 12/30/24), and to the Revised Recommendation Letter (Pacer #261, Filed 12/30/24).

actual methamphetamine which, as discussed below, have repeatedly been the subject of downward variances due to the disparity between the actual and general methamphetamine guidelines.  Moreover, the government's analysis, while purporting to appear empathetic in its recommendation of a downward variance, fails to appreciate the significance of Ms. Alvarez's post-offense rehabilitation over this eight year period on bond; and with little or no regard for the destructive impact of incarceration, would have this court put her in prison for four years.  The government's hard-line position defies any sense of fairness or justice.  *Booker* and its progeny teach us time and again that the guidelines are only advisory.

### B.    Procedural History

On October 12, 2026, Ms. Alvarez was arrested and made her initial appearance on the indictment before the duty Magistrate.  Bond was set, which included location monitoring, drug testing, mental health evaluation, and release to Pretrial (PSA) only. (Pacer #23).

On January 11, 2017, PSA issued its Memorandum re: Release Order Authorization (Pacer #44), and Ms. Alvarez was released from custody.  The Bond Conditions were published on the Pacer docket at that time (Pacer #43), as well as the unsecured Affidavits of Surety (Pacer #45-46).

Accordingly, Ms Alvarez appears before this Court having served a term of custody from October 12, 2016 to January 11, 2017.  This is the term for which a time-served sentence is requested.

On April 15, 2024, an amended plea agreement was filed (Pacer #253) by which Ms. Alvarez pleaded to a lesser included offense of conspiracy to distribute / possess with intent to distribute methamphetamine, with the object of the conspiracy being  21 U.S.C. §841(b)(1)©, which does not carry a mandatory minimum term.  Accordingly, Ms. Alvarez does not face a mandatory minimum sentence as she appears before this court.

1    **C.    Bail Compliance**

2    During the eight years in which this case has been pending, Ms. Alvarez has

3    satisfied bond conditions, including PSA's requirements in regard to residential

4    conditions.  Although there were some issues regarding the location monitoring

5    equipment and reporting for drug testing, both of which were resolved, the PSR

6    observes that "Currently, Pretrial Services records appear to indicate Alvarez has

7    complied with all Court ordered conditions of release." (PSR at par. 9, page 4).

8    In regard to residential conditions, the PSR makes the following positive

9    comments (par. 66, page 14):

10                   Alvarez resides at the address on the face sheet of this report,

11                   which consists of a two bedroom and one bath residence.

12                   Beginning on January 20, 2017, several home contacts were

13                   made at her residence during her pretrial supervision, with

14                   no officer safety issues noted. The most recent home contact

15                   was made on December 12, 2024, where no significant

16                   changes, safety issues or bond violations were noted.

17

18

19                                    **II.**

20              **POSITION WITH REGARD TO THE PRESENTENCE REPORT**

21

22    **PSR - Part A: The Offense**

23              **Offense Conduct Summary: pars. 12 - 14, page 5:**

24    No objections.  The Offense Conduct Summary is consistent with the Factual

25    Basis in the plea agreement.

26    It is important to note that the offense conduct only shows that Ms. Alvarez

27    rented a motel room and had no direct involvement in his drug business.  Footnote 1

28    on page 5 states:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> According to the Government, Alvarez rented the hotel
> room and there is no indication that she sold any drugs or
> actively participated in that capacity.

Likewise, footnote 2 on page 5 states:

> According to the Alhambra Police record, two firearms were
> also found during the search. The Government confirmed,
> however, that there is no evidence that the firearms were
> foreseeable to Alvarez during the instant offense.

The bottom line is that during the period of the offense conduct, which was back in July 2016, Ms. Alvarez was the drug - addicted girlfriend of the lead defendant, Louie Garza, Jr. , who followed his lead and he supplied her with drugs.  She has come a long, long way since all of this happened and deserves to be rewarded with a time-served sentence.

The offense conduct in this case also shows that the two (2) kilos of actual methamphetamine, which is what drives the sentencing guideline calculation, was Garza's drugs.  It was his drug operation and she went along as his girlfriend, who needed him at the time.  Putting the offense conduct in this perspective, it becomes clear that the drug quantity table simply should not drive the sentencing analysis for Ms. Alvarez.  The year and a day recommendation by Probation certainly reflects a recognition of this point.

**Offense Level Calculation**: par. 18, page 6, to par. 31, page 8:

No objections.  The Offense Level Calculation is consistent with the plea agreement.

However, the Probation Office does not discuss the case law addressing the disparity between actual and general methamphetamine which many courts have

1  found to warrant a downward variance, similar to the crack vs. powder disparities of

2  prior years, which is discussed below.

3

4        **PSR - Part B: <u>Criminal History</u>: pars. 33, page 8, to par. 49, page 12:**

5        No objections in that the scoring is technically correct.  Ms. Alvarez has ten

6  Criminal History points, plus one point for being on a criminal justice sentence when

7  the offense in this case occurred, for a total of eleven points, which is Category V.

8        However, the Probation Office fails to note that eight of the ten points are all

9  consistent with substance abuse:

10                  **Par. 37: Possession of controlled substances: 3 points**
                **Par. 38: Possession of paraphernalia (Misd.): 2 points**

11                  **Par. 39: Possession of controlled substance: 2 points**
                **Par. 41: Possession of Methamphetamine (Misd.): 1 point**

12

13        These eight points are classic convictions of drug addicts.  The other two of the

14  ten points are an offense for which she received only 3 years Prob., 90 days Jail (PSR,

15  par. 40).

16        As noted in Par. 43, the eleventh point is imposed because she was on probation

17  in the possession of controlled substance offense referenced in Par. 39.  In other words,

18  in this case, Ms. Alvarez was a drug addict helping her drug-dealing boyfriend who

19  was feeding her drug addiction and by doing so, she violated probation on another

20  drug addict-related offense.

21        Viewed in this context, the Criminal History V category clearly overstates the

22  seriousness of Ms. Alvarez's criminal history.  Particularly now, eight years later

23  where she has achieved a long track record of being drug-free, it is manifestly unjust to

24  calculate a sentence using a Criminal History V category that both overstates her

25  criminal history and likewise contradicts the person she is today, all these years later.

26

27

28

**PSR - Part C: <u>Offender Characteristics</u>: par. 59, page 11, to par. 106, page 18.** No objections.

Information from this section of the PSR is cited in the following section addressing section 3553(a) mitigation.

# III.

## <u>THE COURT SHOULD REJECT THE GOVERNMENT'S</u>

## <u>SENTENCING ANALYSIS WHICH RELIES ON THE</u>

## <u>DRUG QUANTITY TABLE FOR ACTUAL METHAMPHETAMINE</u>

This case involves two kilograms of actual methamphetamine. The Drug Quantity Table in U.S.S.G. 2D1.1 establishes a Base Offense Level (BOL) 36 for methamphetamine as follows:

**At least 15 KG but less than 45 KG of Methamphetamine, or**
**at least 1.5 KG but less than 4.5 KG of Methamphetamine (actual)**

As shown, the guideline table operates by a 10-1 disparity between actual methamphetamine and a methamphetamine mixture – reminiscent of the crack-powder cocaine disparities that ultimately resulted in amendments to the guidelines.

In contrast, if the offense conduct in this case had involved a methamphetamine mixture, rather than actual methamphetamine, the BOL would have been 32 – four levels lower. The disparity between actual and mixture in this case is clearly significant. Level 32 provides in part:

**At least 1.5 KG but less than 5 KG of Methamphetamine, or**
**at least 150 G but less than 500 G of Methamphetamine (actual)**

7

Courts addressing this issue in methamphetamine cases have acknowledged the significance of the disparity in granting downward variances.  For example, United States v. Robinson, 2022 U.S. Dist. LEXIS 231041 (S.D. Miss. Dec. 23, 2022), the District Court in Mississippi granted a defense motion for a downward variance by which the Court applied the BOL 26 applicable to a methamphetamine mixture while recognizing that "[b]ecause he possessed 214.4 grams of especially pure methamphetamine, the Guidelines indicate that he should have a 'base offense level' of 32."  Robinson, 2022 U.S. Dist. LEXIS 231041, at *2.

In granting the motion, the Court in Robinson observed the lack of empirical evidence to support the 10-1 disparity for methamphetamine and the fallacy underlying the Guidelines' use of drug purity as a proxy for culpability, taken together with the U.S. Supreme Court's recognition that "a judge at sentencing considers the whole person before him or her 'as an individual.'"  Concepcion v. United States, 142 S. Ct. 2389, 2395 (2022).  Robinson, 2022 U.S. Dist. LEXIS 231041, at 5-6.

The Court in Robinson also cited opinions by other district courts which have rejected the 10-1 disparity in methamphetamine sentencing, including United States v. Nawanna, 321 F. Supp. 3d 943, 950-51 (N.D. Iowa 2018)(government conceded that there is no empirical basis for the Sentencing Commission's 10-to-1 weight disparity between actual methamphetamine and methamphetamine mixture); United States v. Hartle, 2017 U.S. Dist. LEXIS 93367, 2017 WL 2608221, at *2 (D. Idaho June 15, 2017) ("I have tried to determine whether there is any empirical data from the Sentencing Commission or in the academic literature which would justify the ratio. I have found none."); United States v. Johnson, 379 F. Supp. 3d 1213, 1223-24 (M.D. Ala. 2019) ("[J]ust as courts have criticized the link between drug quantity and the offender's role, they have also debunked the Guidelines' assumed connection between drug purity and criminal role.").  Robinson, 2022 U.S. Dist. LEXIS 231041, at *7.

Beyond the cases cited in Robinson, district courts have continued to reject the actual methamphetamine guidelines and grant downward variances.  For example, in

8

**United States v. Bean**, 371 F. Supp. 3d 46, 57 (Dist N.H. 2019), the court engaged in a lengthy analysis of the unwarranted sentencing disparities between actual and mixture methamphetamine and granted the defendant's motion in advance of the sentencing hearing to declare a categorical policy disagreement with the "purity-driven" methamphetamine sentencing guidelines.

Likewise, in United States v. Celestin, 2023 U.S. Dist. LEXIS 25406, at *14 (E.D. La. Feb. 15, 2023), the district court granted a downward variance, observing that "[t]his Court agrees with the reasoning of Bean and Robinson and joins the growing body of courts that have disagreed with the actual methamphetamine Guidelines on policy grounds. The Court finds there is no empirical basis for the ten to one disparity between the actual methamphetamine and methamphetamine mixture Guidelines."

In light of case law development in this area, the reasons supporting a rejection of the government's sentencing recommendation include its reliance on the purity-driven guideline calculation for actual methamphetamine.

## IV.

### A SENTENCE OF TIME SERVED IS SUFFICIENT, BUT NOT GREATER THAN NECESSARY, TO COMPLY WITH THE PURPOSES OF PUNISHMENT UNDER 18 U.S.C. 3553(a)

A.      3553(a)(1): History And Characteristics Of The Defendant:

1.      Ms. Alvarez Has Demonstrated A Commitment To Be Gainfully Employed As A Responsible Member Of The Community And Parent

In pars. 84 and 88, at pages 17 - 18, the PSR details Ms. Alvarez's steady track record of employment since being released on bond in 2017, including her employment at HomeBoy Industries, from which she has received excellent reviews.  Par. 84

9

references one such review, "a letter from Homeboy Industries dated December 7, 2020 from a director of case management state that 'her energy, enthusiasm and diligence have been an asset to Home Industries Bakery.'" Equally enthusiastic is a more recent letter from Homeboy dated April 21, 2024 from Isaac Gonzales, a case manager and Community Health Worker at Homeboy Industries, attached hereto as Exhibit A.  The letter states in part:

> I am grateful to have met Amada, as she is a great friend.
> Mrs. Alvarez is dependable, trustworthy, and will go above
> and beyond to assist those in need. Amada, was instrumental
> in my educational journey, as she was always willing to assist
> me with my studies. On days when I didn't believe I could
> continue, she encouraged and motivated me to persevere. As
> I walked across the stage on my graduation day, I could hear
> her telling me I could do it.

Attached as Exhibits B and C are documents verifying income from employment. Attached as Exhibit D is a registration form that is necessary for her employment, which demonstrates that she properly follows necessary procedures to comply with both the law and employer expectations.

Viewed as a whole, these documents portray Ms. Alvarez as a law-abiding, productive member of the community who has completely changed her life since this all began eight years ago.  A time-served sentence is a worthy reward for Ms. Alvarez's ongoing commitment that has brought her to this point.

**2.    As A Responsible Citizen, Ms. Alvarez Has Filed Annual Tax
Returns**

At the direction of her CJA counsel, Ms. Alvarez ordered transcripts from the
IRS confirming that she filed her annual tax returns for years 2021, 2022 and 2023.
She presented these documents to her counsel.

**3.    Ms. Alvarez Has Taken Charge Of Her Substance Abuse And
Completed Drug Treatment Programs In The Community**

Together with her commitment to be gainfully employed, Ms. Alvarez jumped
head-on into drug treatment from the moment she was released on bond.  In pars. 72 -
81, at page 15 - 17, the PSR provides a detailed record of her substance abuse history
and treatment programs. (See also Recommendation Letter, at page 5).  Attached as
Exhibit E are certificates issued in August 2023 for completing a program through the
American Society of Addiction Medicine (ASAM).

When this case began back in October 2016, Ms. Alvarez had a long-standing
drug addiction for which she desperately needed treatment.  Eight years later, it is a
pleasure to present her to this Court for sentencing as a functioning, drug-free
member of society who goes to work, pays her bills, pays her taxes, takes her classes
and raises her kids.  A time-served sentence is clearly appropriate.

**4.    Ms. Alvarez Has Substantial Support From Family Which Speak
To Her Excellent Character And Confirm That She Is Worthy Of
Receiving A Time-Served Sentence**

Attached hereto as Exhibit F are letters submitted by each of her parents and
her three daughters which speak to her good character and the deep love and warmth
she is fortunate to have in such a closely-knit family.  These letters make it clear that
Ms. Alvarez has precisely the support needed to continue her progress in life.

V.

**CONCLUSION**

Viewed in conjunction with the positive remarks about Ms. Alvarez that are set forth in the government's sentencing position, the evidence before this Court demonstrates that the principles of punishment under section 3553(a) are amply fulfilled through a time-served sentence.  Ms. Alvarez respectfully asks for this opportunity so that she can continue the progress she has made over the past eight years.

To avoid undue financial hardship, Ms. Alvarez respectfully asks the Court to waive the imposition of a fine under U.S.S.G. 5E1.2.

There are no objections to the supervised release conditions set forth in the Recommendation Letter.

DATED: February 02, 2025                    Respectfully Submitted,

By:_____/S/_____
        **GREGORY NICOLAYSEN**
        **Attorney for Defendant,**
        **Amada Alvarez**

EXHIBIT A



**Board of Directors**

John Brady, Chair
Taylor Adams
Joe Argilagos
Sean Arian
Fr. Gregory Boyle, SJ
James A. Burk
Rosa Campos-Ibarra
Alex Chaves, Sr.
Rick Creed
Troy Dawson
Fr. Allan Deck, SJ
Renee Delphin-Rodriguez
Oscar Gonzalez
J. Michael Hennigan
Bruce Karatz
Pernille Lopez
Christine Lynch
Mercedes Martinez
O'Malley Miller
J. Mario Molina, MD
Ashley Palmer
John Raatz
Viktor Rzeteljski
Rob Smith III
Alan Smolinsky
Elizabeth Stephenson
Carlos Vasquez
Chris Weitz

April 21, 2024.

*To Whom it may concern,*

I am writing this letter on behalf of Mrs. Amada Alvarez.

My name is Isaac Gonzales, and I am a case manager and Community Health Worker here at Homeboy Industries. We are a non-profit organization based in Los Angeles that provides hope, job training, and support for previously incarcerated and formerly gang-involved people, allowing them to redirect their lives and become contributing members of the community.

In 2019, I initially encountered Amada while in the process of reorienting my life. We were both enrolled at East Los Angeles College and employed at Homeboy Industries. After enrolling in a number of classes with her, we became acquainted. I quickly became cognizant of her predicament and discovered that she possessed an immense passion for education. Amada's circumstances did not define her, as she demonstrated incredible strength. As an illustration, she is a primary provider for her three daughters as a single mother, and she is willing to do anything to ensure their welfare.

I am grateful to have met Amada, as she is a great friend. Mrs. Alvarez is dependable, trustworthy, and will go above and beyond to assist those in need. Amada, was instrumental in my educational journey, as she was always willing to assist me with my studies. On days when I didn't believe I could continue, she encouraged and motivated me to persevere. As I walked across the stage on my graduation day, I could hear her telling me I could do it.

Let this letter attest to the exemplary character that Mrs. Alvarez embodies. Should you have any inquiries, please do not hesitate to contact me, as I express my deepest gratitude for your attention to the aforementioned.

Sincerely,
**Isaac Gonzales**
**CHW/JCOD**
**Homeboy Industries**
**igonzales@homeboyindustries.org**
**C: (323)852-2888**
**O: (323)526-1254 ext. 335**

EXHIBIT B

UVM   000090          0000034001   1

**Earnings   Statement**



*JCWF   ENTERPRISE*
*DBA:ATLAS   RECOVERY   CENTER*
*19687   LOS   ALIMOS   ST.*
*CHATSWORTH,   CA   91311*

| | |
|---|---|
| Period   Beginning: | 01/01/2025 |
| Period   Ending: | 01/15/2025 |
| Pay   Date: | 01/17/2025 |

AMADA   ANGELA   ALVAREZ
5002   NAVARRO   STREET
LOS   ANGELES   CA   90032

Filing   Status:   Head   of household
Exemptions/Allowances:
    Federal:   Standard   Withholding   Table

Social   Security   Number:

| Earnings | rate | hours | this   period | year   to   date |
|---|---|---|---|---|
| Regular | 21.0000 | 24.00 | 504.00 | 504.00 |
| Overtime | 31.5000 | .53 | 16.70 | 16.70 |
| Meal   Premium | 21.0000 | 2.00 | 42.00 | 42.00 |
| **Gross   Pay** | | | **$562.70** | 562.70 |

| Deductions | Statutory | | |
|---|---|---|---|
| | Social   Security   Tax | -34.89 | 34.89 |
| | Medicare   Tax | -8.16 | 8.16 |
| | CA   SDI   Tax | -6.75 | 6.75 |
| | **Net   Pay** | | **$512.90** |
| | Checking | -512.90 | 512.90 |
| | **Net   Check** | | **$0.00** |

Your   federal   taxable   wages   this   period   are   $562.70
Your   CA   taxable   wages   this   period   are   $562.70

| Other   Benefits   and Information | this   period | total   to   date |
|---|---|---|
| Totl   Hrs   Worked | 24.53 | |

**Important   Notes**
ADP   TotalSource,   Inc.,A   Professional   Employer   Organization
10200   Sunset   Drive,   Miami,   FL   33173
1-844-448-0325

BASIS   OF   PAY:   HOURLY

**Additional   Tax   Withholding   Information**
Taxable   Marital   Status:
    CA:                     Single
Exemptions/Allowances:
    CA:                     1(Head   of   Household)

© 2000 ADP, Inc.



| | | | |
|---|---|---|---|
| Advice   number: | | | 00000034001 |
| Pay   date: | | | 01/17/2025 |

| Deposited   to   the   account   of | account   number | transit   ABA | amount |
|---|---|---|---|
| AMADA   ANGELA   ALVAREZ | xxxxx5072 | xxxx   xxxx | $512.90 |

**NON-NEGOTIABLE**

EXHIBIT C



January 24, 2025

To whom it may concern:

Please find the following information regarding payments made to Amada Alvarez for services provided under their Independent Contractor Agreement.

Amada Alvarez is/was an independent contractor who provided services as a personal shopper and/or delivery driver through the Instacart platform from approximately February 12, 2022 to January 24, 2025. Earnings generally comprise of a combination of per item and per delivery payments and/or tips. As an independent contractor, service availability is dictated by the individual and no employee benefits are provided (e.g., workers' compensation insurance or sick pay) by Instacart. Individual did not report to a manager.

Amada Alvarez is/was an independent contractor who provided services as a personal shopper and/or delivery driver through the Instacart platform from approximately February 12, 2022 to January 24, 2025. Under the individual's Independent Contractor Agreement, earnings generally consist of a payment for the order that is based on factors such as the retailer type, store location, number of items, and any applicable incentive, and customer tips. As an independent contractor, service availability is dictated by the individual and no employee benefits are provided (e.g., workers' compensation insurance or sick pay) by Instacart. This individual did not report to a manager.

**Payments for Services Provided between January 01, 2024 and  December 31, 2024: $3,503.24 USD**

See below for detailed payment information.

For more information, please contact us at *verifications@instacart.com*.


Very sincerely,

**Instacart Verifications Team**
888-246-7822 (US)
888-508-1922 (CAD)

| PAID DATE | AMOUNT PAID |
|-----------|-------------|
| December 30, 2024 | $20.31 USD |
| December 29, 2024 | $8.73 USD |
| December 28, 2024 | $7.95 USD |
| December 28, 2024 | $11.75 USD |
| December 28, 2024 | $6.45 USD |
| December 26, 2024 | $5.15 USD |
| December 26, 2024 | $102.44 USD |
| December 25, 2024 | $26.78 USD |
| December 25, 2024 | $9.87 USD |
| December 24, 2024 | $2.00 USD |

| PAID DATE | AMOUNT PAID |
|---|---|
| December 22, 2024 | $12.60 USD |
| December 22, 2024 | $7.60 USD |
| December 22, 2024 | $7.41 USD |
| December 21, 2024 | $9.32 USD |
| December 19, 2024 | $44.96 USD |
| December 18, 2024 | $9.72 USD |
| December 17, 2024 | $7.39 USD |
| December 17, 2024 | $12.34 USD |
| December 17, 2024 | $18.34 USD |
| December 16, 2024 | $15.50 USD |
| December 16, 2024 | $27.71 USD |
| December 15, 2024 | $9.68 USD |
| December 15, 2024 | $11.51 USD |
| December 15, 2024 | $16.85 USD |
| December 15, 2024 | $11.74 USD |
| December 14, 2024 | $18.05 USD |
| December 14, 2024 | $16.45 USD |
| December 13, 2024 | $24.24 USD |
| December 13, 2024 | $23.04 USD |
| December 06, 2024 | $9.15 USD |
| December 03, 2024 | $2.00 USD |
| December 01, 2024 | $14.50 USD |
| December 01, 2024 | $12.08 USD |
| November 30, 2024 | $22.19 USD |
| November 30, 2024 | $9.72 USD |
| November 30, 2024 | $13.03 USD |
| November 26, 2024 | $2.00 USD |
| November 25, 2024 | $18.48 USD |
| November 23, 2024 | $11.25 USD |
| November 21, 2024 | $30.47 USD |
| November 19, 2024 | $10.45 USD |
| November 17, 2024 | $10.99 USD |

| PAID DATE | AMOUNT PAID |
|-----------|-------------|
| November 15, 2024 | $10.36 USD |
| November 15, 2024 | $14.17 USD |
| November 14, 2024 | $8.61 USD |
| November 13, 2024 | $13.01 USD |
| November 13, 2024 | $9.35 USD |
| November 13, 2024 | $18.60 USD |
| November 13, 2024 | $18.03 USD |
| November 12, 2024 | $4.50 USD |
| November 12, 2024 | $11.34 USD |
| November 10, 2024 | $8.36 USD |
| November 07, 2024 | $47.78 USD |
| November 04, 2024 | $40.29 USD |
| November 04, 2024 | $23.55 USD |
| November 03, 2024 | $15.86 USD |
| November 03, 2024 | $26.70 USD |
| November 02, 2024 | $27.86 USD |
| November 02, 2024 | $27.30 USD |
| November 01, 2024 | $10.81 USD |
| November 01, 2024 | $13.93 USD |
| November 01, 2024 | $4.66 USD |
| November 01, 2024 | $13.96 USD |
| October 31, 2024 | $48.27 USD |
| October 26, 2024 | $21.75 USD |
| October 26, 2024 | $9.77 USD |
| October 26, 2024 | $11.12 USD |
| October 25, 2024 | $10.56 USD |
| October 25, 2024 | $6.56 USD |
| October 25, 2024 | $6.43 USD |
| October 25, 2024 | $5.78 USD |
| October 25, 2024 | $7.72 USD |
| October 25, 2024 | $13.16 USD |
| October 25, 2024 | $15.11 USD |

| PAID DATE | AMOUNT PAID |
|---|---|
| October 24, 2024 | $19.07 USD |
| October 24, 2024 | $7.79 USD |
| October 24, 2024 | $9.87 USD |
| October 23, 2024 | $11.15 USD |
| October 21, 2024 | $7.08 USD |
| October 18, 2024 | $9.60 USD |
| October 18, 2024 | $14.04 USD |
| October 17, 2024 | $4.75 USD |
| October 17, 2024 | $8.97 USD |
| October 15, 2024 | $6.50 USD |
| October 15, 2024 | $8.39 USD |
| October 10, 2024 | $84.52 USD |
| October 09, 2024 | $7.89 USD |
| October 08, 2024 | $2.40 USD |
| October 05, 2024 | $10.00 USD |
| October 05, 2024 | $7.10 USD |
| October 05, 2024 | $24.42 USD |
| October 05, 2024 | $16.94 USD |
| October 05, 2024 | $13.40 USD |
| October 04, 2024 | $5.50 USD |
| October 04, 2024 | $16.38 USD |
| October 03, 2024 | $32.19 USD |
| October 02, 2024 | $9.61 USD |
| October 02, 2024 | $41.23 USD |
| October 01, 2024 | $15.79 USD |
| October 01, 2024 | $22.77 USD |
| October 01, 2024 | $2.00 USD |
| September 30, 2024 | $7.50 USD |
| September 30, 2024 | $10.87 USD |
| September 30, 2024 | $8.18 USD |
| September 29, 2024 | $13.89 USD |
| September 28, 2024 | $21.72 USD |

| PAID DATE | AMOUNT PAID |
|---|---|
| September 28, 2024 | $9.25 USD |
| September 28, 2024 | $14.15 USD |
| September 27, 2024 | $21.14 USD |
| September 27, 2024 | $6.49 USD |
| September 26, 2024 | $7.07 USD |
| September 25, 2024 | $8.56 USD |
| September 25, 2024 | $12.99 USD |
| September 24, 2024 | $6.56 USD |
| September 20, 2024 | $9.17 USD |
| September 20, 2024 | $6.43 USD |
| September 20, 2024 | $9.41 USD |
| September 19, 2024 | $12.23 USD |
| September 18, 2024 | $11.63 USD |
| September 17, 2024 | $2.33 USD |
| September 15, 2024 | $15.74 USD |
| September 15, 2024 | $6.55 USD |
| September 15, 2024 | $5.27 USD |
| September 15, 2024 | $15.45 USD |
| September 14, 2024 | $6.59 USD |
| September 14, 2024 | $9.91 USD |
| September 14, 2024 | $12.82 USD |
| September 13, 2024 | $9.57 USD |
| September 13, 2024 | $15.23 USD |
| September 12, 2024 | $52.60 USD |
| September 12, 2024 | $7.09 USD |
| September 12, 2024 | $6.65 USD |
| September 10, 2024 | $2.00 USD |
| September 09, 2024 | $7.17 USD |
| September 09, 2024 | $19.99 USD |
| September 05, 2024 | $13.00 USD |
| September 05, 2024 | $6.34 USD |
| September 05, 2024 | $13.43 USD |

| PAID DATE | AMOUNT PAID |
|---|---|
| September 04, 2024 | $7.21 USD |
| September 03, 2024 | $8.30 USD |
| September 03, 2024 | $4.90 USD |
| September 03, 2024 | $11.41 USD |
| September 03, 2024 | $13.03 USD |
| September 02, 2024 | $11.43 USD |
| September 02, 2024 | $9.50 USD |
| September 01, 2024 | $11.94 USD |
| September 01, 2024 | $15.66 USD |
| August 30, 2024 | $7.43 USD |
| August 30, 2024 | $7.48 USD |
| August 29, 2024 | $50.88 USD |
| August 29, 2024 | $16.67 USD |
| August 28, 2024 | $19.93 USD |
| August 27, 2024 | $8.55 USD |
| August 27, 2024 | $4.00 USD |
| August 26, 2024 | $14.68 USD |
| August 25, 2024 | $6.50 USD |
| August 25, 2024 | $10.79 USD |
| August 25, 2024 | $7.74 USD |
| August 25, 2024 | $10.40 USD |
| August 25, 2024 | $22.34 USD |
| August 24, 2024 | $8.48 USD |
| August 24, 2024 | $10.80 USD |
| August 22, 2024 | $41.13 USD |
| August 22, 2024 | $6.50 USD |
| August 22, 2024 | $22.00 USD |
| August 21, 2024 | $6.61 USD |
| August 21, 2024 | $15.55 USD |
| August 20, 2024 | $7.54 USD |
| August 19, 2024 | $31.90 USD |
| August 18, 2024 | $8.94 USD |

| PAID DATE | AMOUNT PAID |
|---|---|
| August 14, 2024 | $7.62 USD |
| August 14, 2024 | $7.14 USD |
| August 14, 2024 | $4.50 USD |
| August 13, 2024 | $7.02 USD |
| August 13, 2024 | $15.49 USD |
| August 13, 2024 | $15.57 USD |
| August 06, 2024 | $2.07 USD |
| July 30, 2024 | $4.11 USD |
| July 24, 2024 | $80.93 USD |
| July 18, 2024 | $5.19 USD |
| July 16, 2024 | $2.00 USD |
| July 13, 2024 | $14.40 USD |
| July 02, 2024 | $12.27 USD |
| June 25, 2024 | $12.83 USD |
| June 23, 2024 | $6.97 USD |
| June 22, 2024 | $11.88 USD |
| June 20, 2024 | $32.91 USD |
| June 20, 2024 | $19.81 USD |
| June 19, 2024 | $12.82 USD |
| June 17, 2024 | $11.84 USD |
| June 17, 2024 | $5.55 USD |
| June 16, 2024 | $13.78 USD |
| June 16, 2024 | $12.28 USD |
| June 08, 2024 | $13.76 USD |
| June 08, 2024 | $25.34 USD |
| May 30, 2024 | $7.96 USD |
| May 23, 2024 | $32.23 USD |
| May 20, 2024 | $23.14 USD |
| May 18, 2024 | $4.50 USD |
| May 18, 2024 | $9.72 USD |
| May 18, 2024 | $7.15 USD |
| May 17, 2024 | $4.50 USD |

| PAID DATE | AMOUNT PAID |
|---|---|
| May 17, 2024 | $14.12 USD |
| May 16, 2024 | $15.66 USD |
| May 14, 2024 | $13.28 USD |
| May 14, 2024 | $6.22 USD |
| May 14, 2024 | $13.78 USD |
| May 13, 2024 | $11.91 USD |
| May 10, 2024 | $39.44 USD |
| May 08, 2024 | $11.57 USD |
| May 08, 2024 | $12.40 USD |
| May 07, 2024 | $27.05 USD |
| May 06, 2024 | $4.92 USD |
| May 06, 2024 | $10.13 USD |
| May 05, 2024 | $8.51 USD |
| May 04, 2024 | $11.03 USD |
| May 03, 2024 | $5.50 USD |
| May 03, 2024 | $13.63 USD |
| May 03, 2024 | $18.37 USD |
| May 03, 2024 | $14.22 USD |
| April 28, 2024 | $40.33 USD |
| April 21, 2024 | $10.27 USD |
| April 19, 2024 | $24.80 USD |
| April 16, 2024 | $4.27 USD |
| April 13, 2024 | $38.60 USD |
| April 09, 2024 | $2.50 USD |
| April 05, 2024 | $8.89 USD |
| April 05, 2024 | $42.57 USD |
| April 02, 2024 | $19.95 USD |
| April 01, 2024 | $13.24 USD |
| April 01, 2024 | $8.84 USD |
| March 31, 2024 | $25.55 USD |
| March 31, 2024 | $16.57 USD |
| March 31, 2024 | $20.12 USD |

| PAID DATE | AMOUNT PAID |
|---|---|
| March 30, 2024 | $6.64 USD |
| March 30, 2024 | $20.99 USD |
| February 06, 2024 | $1.46 USD |
| January 30, 2024 | $2.00 USD |
| January 25, 2024 | $14.64 USD |
| **TOTAL** | **$3,503.24 USD** |

EXHIBIT D



**CCAPP**
**Credentialing**

2400 Marconi Ave.          T (916) 338-9460          ccapp.us
Sacramento, CA 95821       F (916) 338-9468

<u>**KEEP THIS LETTER FOR YOUR RECORDS**</u>

<u>**IT IS PROOF OF REGISTRATION FOR YOUR EMPLOYER**</u>

Dear   AMADA ALVAREZ

This letter confirms that you are now registered with CCAPP. State of California
Department of Health Care Services Counselor Certification Regulations require
that you complete the certification process within FIVE years from the date of
your <u>first</u> registration.  Your registration information is as follows:

R1504350423                     04/18/2023

Registration Number          Original Issue Date

04/18/2023                      04/18/2024

Valid From                      Valid To

Your registration will need to be renewed annually until you become certified.
Every year you are required to have three hours total of ethics and confidentiality
training and show progress toward certification by documenting that you have
taken 45 hours of coursework required for certification (core education). If you
would like to enroll in a course to complete this requirement, please visit
ccapp.us and click on the education tab.

Good luck with your certification process, and please contact us with any further
questions or concerns.

Sincerely,

*Pete Nielsen*

Pete Nielsen
Chief Executive Officer              **ww.ccapp.us**

Inspiring Excellence, Promoting Change

EXHIBIT E

# Certificate of Completion

This certifies that

## Amada Angela Alvarez

has successfully completed the eLearning course

## ASAM Module I – Multidimensional Assessment

**August 16, 2023**

**Date of Training**

Alyssa A. Forcehimes, Ph.D.
Executive Director

**This eLearning module is approved for credit by:**

CCAPP (California Consortium of Addiction Programs and Professionals), Provider #OS-18-286-0625
Approved for 5.0 Continuing Education Units (CEU)

CADTP (California Association of DUI Treatment Programs), Provider #127
Approved for 5.0 Continuing Education Units (CEU)

CAADE (California Association for Alcohol/Drug Education), Provider #CP40 981 CH 0525
Approved for 5.0 Continuing Education Units (CEU)



# *Certificate of Completion*

This certifies that

## *Amada Angela Alvarez*

has successfully completed the eLearning course

## *ASAM Module II – From Assessment to Service Planning*

**August 16, 2023**

**Date of Training**



Alyssa A. Forcehimes, Ph.D.
Executive Director

**This eLearning module is approved for credit by:**

CCAPP (California Consortium of Addiction Programs and Professionals), Provider #OS-18-286-0625
Approved for 5.0 Continuing Education Units (CEU)

The **Change** Companies®

EXHIBIT F

Dear Judge],

I am reaching out to you with a heavy heart and a sincere plea for leniency in the sentencing of my daughter, Amada Alvarez, who stands before you today as a transformed individual deserving of a second chance.

I fully acknowledge the gravity of the crime she committed and the importance of being held accountable for one's actions. However, I implore you to consider the circumstances that led her down a misguided path and to recognize the tremendous strides she made in turning her life around since her release.

Following her time served, my daughter has undergone a profound transformation, emerging as an exemplary role model within our community. Instead of succumbing to the shadows of her past, she has chosen to channel her experiences into helping others who find themselves on a similar journey of redemption and recovery. Through her guidance, understanding, and unwavering support, she has become a beacon of hope for those seeking a way out of the darkness.

I can attest firsthand to her dedication to personal growth and her commitment to fostering positive change in the lives of others. Her selfless acts of kindness, her tireless efforts to support those in need, and her genuine desire to make amends for her past mistakes stand as a testament to the remarkable individual she has become.

I humbly ask for your compassion and understanding as you consider her sentencing, taking into account not only the offense committed but also the profound transformation and positive impact she has had on those around her. I firmly believe that with the continued support and love she gives other too will prosper.

Moreover, she needs to be home for her three daughters. Just recently I was diagnosed with prostate cancer and hopefully with surgery and the grace of god everything will turn out ok. But during this time me and my wife cannot take on the responsibility of her three girls while I am going through treatment. Of course if we have too we will, we love our grandchildren but it is just overwhelming. I again ask for your compassion in your decision. Thank you.

Miguel Alvarez

Dear Judge,

I am writing to provide a heartfelt testimony regarding the extraordinary journey of my daughter Amada Alvarez] and to shed light on her remarkable transformation over the past 8 years. It is with immense pride and gratitude that I share with you the positive changes that have taken place in her life.

From battling with the grips of drug addiction and toxic relationships to emerging as a shining example of resilience and strength, my daughter has defied the odds and turned her life around for the better. Despite facing numerous challenges and personal struggles, she has displayed unwavering determination, courage, and a relentless commitment to self-improvement.

Over the years, I have witnessed my daughter's unwavering dedication to overcoming her addiction and rebuilding her life from the ground up. Through sheer willpower, hard work, and the support of her loved ones, she has successfully conquered her demons and embraced a path of sobriety and personal growth.

Not only has my daughter overcome her past difficulties, but she has also taken on the responsibilities of a mother with grace, compassion, and unwavering love for her three daughters. As a single mother, she works tirelessly to provide for her family, support me with our household bills, and create a nurturing environment for her children to thrive and grow.

Furthermore, amidst the challenges of her own journey, my daughter has been a pillar of strength and support for our family, especially since we received the devastating news about her father's cancer diagnosis. Despite the emotional turmoil and uncertainty that this situation has brought, she has shown immense strength, empathy, and resilience in this hard time. She is where she needs to be with him and our family during this time.

I am not able to attend court due to the short notice and numerous changing of court dates but my daughter knows we are with her in her heart and will be praying for her to return home with her beautiful daughters. Thank you and god bless you.

Sincerely,
Lupe Alvarez

Dear Honorable Judge,

I am writing to provide a heartfelt testimonial in support of my mother, Amada Alvarez, and to shed light on the remarkable transformation she has undergone over the past eight years. As her daughter, I am deeply moved by the positive changes she has made in her life and the significance of her presence in mine.

Eight years ago, our relationship was strained due to various challenges my mother was facing. Her struggles with personal issues had a profound impact on our family dynamics and my well-being. However, since then, I have witnessed a remarkable journey of growth, resilience, and dedication on her part.

In these past years, my mother has worked tirelessly to address and overcome her personal obstacles. She has engaged in therapy, pursued her education, and consistently demonstrated a commitment to self-improvement. She not only was being a mother but the roll model I always wanted. Through her determination and perseverance, she has successfully transformed her life and emerged as a source of strength and support for our family.

Most importantly, I want to emphasize the profound impact my mother's changes have had on our relationship. Over the years, we have built a bond founded on trust, mutual respect, and love. Her unwavering dedication to being present in my life, offering guidance, and fostering a nurturing environment has been instrumental in shaping the person I am today.

As her daughter, I cannot overstate how much I need my mother in my life. She is not only a parent but also a mentor, a confidante, and a pillar of support. Her presence brings stability, warmth, and unconditional love into my life, and I cherish every moment spent together.

I humbly urge the court to consider the profound positive changes my mother has made and the invaluable role she plays in my life. This is my senior year in High School and even though I have struggled the past few years with my grades I am graduating. That's all thanks to my mother as much as we would fight she was always a big advocate for education. I'm hoping that you will continue granting her the opportunity to continue being an active and supportive presence in my life as I begin my college journey this would not only benefit our family but also contribute to her ongoing journey of redemption and renewal.

Thank you for your attention to this matter and for considering my perspective on the exceptional transformation and importance of my mother.

Sincerely,
Branndi Alvarez

Dear Honorable Judge,

A few months back I was here for the sentencing of my father Louie Garza. Although he has never really been in my life it hurt my heart to hear that he has been gone for so long and still has so 4 or more years to go. I know my dad has been in and out of my life since birth. The last time my dad was out I was 8 yrs old. When he got sentenced I was a month away from turning 16 yrs old. I was devastated when you gave your ruling even though I knew deep down inside that he wasn't coming home yet it just made me very sad because I knew he was going to miss my sweet sixteen father daughter dance. Now I'm back this time for my mother who by the way was there for my sweet 16 and who in place of my father danced with me. My mother no matter what has always been there for me. Even though she is tired, has no gas, and or is busy she is always there. For years now, my mother has shown immense strength and resilience in overcoming various struggles and personal demons to become a pillar of support and stability for me and my two sisters. Her journey toward self-improvement and personal growth has not only been inspiring but also transformative for our family.

Growing up, I have witnessed my mother's unwavering dedication and tireless efforts to provide us with a loving and nurturing environment despite facing numerous challenges along the way. I can't remember her ever missing a school play or awards assembly. In elementary school she was very involved with our school even volunteering almost everyday until she got a job. Her commitment to our well-being, education, and emotional security is sometimes unnoticed and we sometimes take her for granted but she is a strong remarkable woman and even when she is worried or sad she never wants us to see her cry she is always so strong for us. She is always there for us if one of us needs her. We know we can count on her. She may not see it yet but this is shaping us into the strong, compassionate woman we are today.

As a 16-year-old girl on the verge of adulthood, I cannot emphasize enough how crucial my mother's guidance, love, and presence are in my life. She is not just a parent but also a mentor, my best-friend, confidante, and source of support during both good and challenging times. Her wisdom, encouragement, and unconditional love have been instrumental in shaping my values, aspirations, and sense of self-worth.

I wholeheartedly believe that removing my mother from our lives would not only disrupt the stability and security we have worked so hard to establish but also deprive me and my sisters of the foundational support we need to navigate the complexities of adolescence and young adulthood. My mom is a single mother and yes she has made mistakes but she has also redeemed herself. A lot of her mistakes comes from her poor choice in men. (Even though I know my dad is one of those men) I've seen my mom overcome so much and take a huge step in deciding to be alone for the time being and get herself together. It's been a struggle for her but one thing is she never gives up.

I humbly ask for your consideration and compassion in recognizing the profound impact my mother has had on our lives and allowing her to continue being a vital part of our family unit. Her journey of personal growth and transformation serves as a testament to her resilience, determination, and unwavering commitment to our well-being.

Thank you for taking the time to read this letter and for your attention to this matter. I am hopeful that you will consider the significance of my mother's presence in our lives and make a decision that prioritizes our family's continued unity and well-being.

Sincerely,

Brianna Garza

Dear  Judge,

I am writing this letter to express the deep love and need I have for my mother, Amada Alvarez, and to share with you how her presence in my life has impacted me during difficult times. As an 11-year-old girl struggling with depression, my mom's support and understanding are vital to my well-being and happiness.

Growing up, I have faced challenges dealing with feeling overwhelmed by emotions that I sometimes find hard to express. My mom, having experienced similar struggles, has been a source of comfort and guidance for me. She understands me in a way that no one else does and provides me with the understanding and encouragement I need to understand my feelings.

Having my mom in my life is not only important but needed for my emotional stability. My mom is not like other moms. She struggled with her own issues for a long time but always made sure she was there for me and sisters. I also know that when my mom is around I am safe. That is what she provides for me now a safe space where I can be myself without fear of judgment. Through her own experiences, she has taught me the importance of taking care of myself, standing up for myself, and asking for help when I need it.

Losing my mom would be devastating for me and my sisters. She is the one who takes us to school, listens to our worries, and cheers us up when we're feeling down, drives my me and my sisters around where we need to go. Her absence our lives would destroy me and leave a hole in our hearts that no one else could fill. I rely on her for everything to pick me up for school, to feed me, to take me where I need to go, to guide me through difficult moments. She is the only one who can protect me from my older sisters. I hope you to understand the impact that my mom has on my life and well-being. She is not just a parent she's the only one who understands me. Sometimes I feel like she is the only one who loves me.

Britney Alvarez